UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| PIA HOLMES | CASE NO.  5:23-CV-00153 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BELLSOUTH TELECOMMUNICATIONS, LLC | MAGISTRATE JUDGE HORNSBY |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are cross-motions to enforce settlement.  Plaintiff Pia Holmes filed a Motion to Enforce Settlement Agreement.  [doc. #68].  Defendant BellSouth Telecommunications, LLC d/b/a AT&T Louisiana then filed its own Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with Prejudice.  [doc. #69].  Both motions are opposed.  *See* [docs. #69, #70].

For reasons detailed below, IT IS RECOMMENDED that Plaintiff's Motion to Enforce Settlement Agreement be GRANTED IN PART and DENIED IN PART,[1] and that Defendant's Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with Prejudice also be GRANTED IN PART and DENIED IN PART.

**Background**

On February 3, 2023, Plaintiff Pia Holmes ("Holmes") filed a Complaint against BellSouth Telecommunications, LLC d/b/a AT&T Louisiana ("BellSouth").  [doc. #1].  Holmes alleges that,

---

[1] The District Court requested the undersigned conduct the settlement conferences in this matter, and, accordingly, the undersigned holds authority to recommend action on these cross motions.

shortly before the filing of her Complaint, between January 13, 2023, and January 17, 2023, AT&T employees and contractors trespassed on her property at 2020 Crabapple Drive, Shreveport, Louisiana 71118, by placing permanent structures, including Fiber Optic Cable, on her land. (Complaint [doc. #1, p. 5]; Memo in Support of SJ [doc. #49-1, p. 1]).  Holmes subsequently filed an Amended Complaint adding claims against BellSouth for (1) conversion; (2) trespass; (3) violations of 47 U.S.C. § 206; and (4) violations of 47 U.S.C. § 206.  [doc. #6].

In response, BellSouth filed an Answer with a Counterclaim, seeking to compel Holmes to allow entry onto her property to remove the portion of its equipment located outside the utility servitude and restore the property to its prior condition, effectively seeking to address Holmes' Complaint.  [doc. #11].  Holmes' neighborhood, including her property, is encumbered with utility easements, including one for BellSouth's facilities.  (Memo in Support of SJ [doc. #49-1, p. 2]). BellSouth is utilizing these easements to install underground fiber cables.  *Id.*  Holmes, however, claims that BellSouth's equipment extends beyond its easement, constituting a trespass on her property.  *Id.*  BellSouth has acknowledged from the outset that a portion of its underground cable is several feet outside of its easement and encroaching on Holmes' property.  *Id.*  BellSouth made multiple efforts to seek removal of the cable, but Holmes refused access to her property.  *Id.*

Indeed on March 23, 2023, Magistrate Judge Hornsby issued an order [doc. #21] denying Holmes' motion to amend as frivolous, but suggesting that Holmes work with defense counsel to resolve this case; specifically, he explained that would require her to "work with Defendant to allow them to remove any equipment Plaintiff contends is outside the proper right-of-way or servitude." *Id.*  When that suggestion fell on deaf ears, the matter was referred to me to hold a settlement conference.  [doc. #29].

The first settlement conference was held on June 28, 2023 [doc. #34]. The undersigned traveled to the Tom Stagg United States Courthouse in Shreveport and met with Holmes and with BellSouth's counsel, David Bienvenu, and a representative, Lisa Welch. Despite the parties' efforts, settlement could not be achieved.[2]

Following the first settlement conference, Holmes continued to file with the Court, seeking to "enforce" Judge Hornsby's prior order, while also appealing that decision to the district judge, Judge S. Maurice Hicks, Jr. Judge Hornsby denied her motion and explained that

> The prior order did not direct or order Bellsouth to remove anything. Rather, the court suggested that Plaintiff and defense counsel visit to try to resolve the case by agreement, and that resolution should include working with Bellsouth to allow them to remove equipment. The court did not specifically order that any equipment had to be removed. If the parties were unable to come to an agreement on such matters, then the issues will have to be resolved through the ordinary litigation process

[doc. #35]. Judge Hicks then denied her appeal, confirming Judge Hornsby's conclusion that her motion to amend was frivolous.

Both judges then denied Holmes' request for injunctive relief. [doc. #s 41, 42, & 43].

A scheduling order subsequently issued setting a bench trial before Judge Hicks. [doc. #44].

However, on January 9, 2024, BellSouth filed a Motion for Partial Summary Judgment [doc. #49]. After briefing the motion was granted as to Holmes' claims for conversion and violations of 47 U.S.C. § 206 and § 207. [doc. #s 60 & 61]. The only surviving claim is trespass. *Id.*

After holding a pre-trial conference with the parties, on March 20, 2024, Judge Hicks then requested that the undersigned conduct a second settlement conference.

---

[2] During that conference in personal sessions with me, Holmes became increasingly frustrated and volatile such that I ended the conference.

A second settlement conference was held on April 23, 2024. (Order for Settlement Conference [doc. #65]). The parties reached an agreement and requested entry of a 90-day order of dismissal. (Minutes [doc. #66]). The settlement terms were stated on the record and recorded by a courtroom deputy. Those terms included BellSouth's agreement to (1) remove the underground innerduct; (2) restore any disturbed soil or sod; (3) repair any damage to the rear wooden fence along the rear portion of Holmes' property occasioned by the installation; (4) remove a handhold; and (5) pay the sum of $10,000 to Holmes for her inconvenience. (Settlement Conference Transcript [doc. #76]) (hereinafter referred to as TR1). The deadline for meeting these settlement terms was set for July 1, 2024. (TR1 p. 3). Holmes agreed to dismiss the lawsuit with prejudice and sign a written receipt and release agreement. (TR1 p. 3). When discussing the rear wooden fence, Holmes stated that it "came a-loose" and that it was "bent down" and "came out of the little holes." (TR1 pp. 3-4). Counsel for BellSouth, Mr. David Bienvenu ("Bienvenu"), when discussing the terms of the settlement, stated that BellSouth would "reinforce the back fence." (TR1 p. 4).

The day after the settlement conference, BellSouth sent a Release and W9 to Holmes and sent her an email copy on April 25, 2024. (Memo in Support of M/Enforce [doc. #69-1, p. 2]). Holmes responded with multiple emails expressing concerns that the Release was incomplete. *Id.* On May 8, 2024, Holmes sent a revised Release agreement which requested additional language. *Id.* at p. 3. Lisa Welch ("Welch"), the BellSouth manager and engineer who appeared at both settlement conferences, was also tasked with communicating with Holmes to remove the portion of the innerduct that was trespassing on her property. *Id.* at p. 2. The innerduct was removed on June 14, 2024. *Id.* at p. 3. Sod was delivered and placed the following week. *Id.*

On June 27, 2024, Holmes sent an email inquiring whether BellSouth required an extension, as she believed additional sod was to be delivered and her rear wooden fence repaired. *Id.* at pp. 3-4.  Following a conversation between BellSouth's counsel and Welch, it was determined that Holmes sought sod to cover her entire yard, as well as repairs to her rear fence, which had been damaged during a storm.  *Id.* at p. 4.   In response, BellSouth offered an additional $2,000 to cover the cost of the sod and any necessary rear fence repairs.  *Id.*  Holmes declined the offer, stating in an email that she would not agree "to anything else under duress."  (Exhibit N [doc. #69-2, p. 55]).

BellSouth's counsel, Windsor Richmond ("Richmond"), subsequently informed Holmes that if she refused to sign the settlement documents, they would file a motion to enforce the settlement.  (Memo in Support of M/Enforce [doc. #69-1. p. 5]).  In response, Holmes sent multiple emails to BellSouth's counsel with statements such as "[you people cannot be dealt with reasonably]," "[take some accountability]," and "[once again you people have ruined another vacation]."   (Exhibit N [doc. #69-2, pp. 55, 59]).

On July 2, 2024, Holmes filed the instant Motion to Enforce Settlement Agreement, arguing that BellSouth had not fully complied with the agreed terms, specifically regarding the sod installation and fence repair.  [doc. #68].   She also claimed that a permit would be required to repair the fence.  *Id.* at p. 4.  Holmes asks that this Court enforce the settlement agreement that was reached on April 23, 2024, asserting that BellSouth needs to complete the sod installation, repair the rear fence on her property, maintain the new servitude, and have an authorized representative of BellSouth sign the settlement agreement.  *Id.* at p. 5.

On July 8, 2024, BellSouth filed a Motion to Enforce Settlement and Sanctions, Opposition to Plaintiff's Motion to Enforce, or alternatively, Motion to Dismiss Plaintiff's Claims with

Prejudice.  [doc. #69].  BellSouth argues that the email exchange between its counsel and Holmes, in which an additional $2,000 was offered, constituted a binding settlement agreement.  (Memo in Support of M/Enforce [doc. #69-1, p. 6]).  Additionally, BellSouth claims that Holmes has engaged in frivolous and harassing conduct through all her pleadings, emails, and phone calls, warranting dismissal of the suit with prejudice.  *Id.*   BellSouth also points to the photographs of Holmes' backyard prior to the project, which allegedly showed no sod, countering her claims that the contractor failed to restore the property to its original condition.  *Id.* at p. 8.

As a result, BellSouth requests that, since an agreement occurred regarding the additional funds to cover the repairs to the fence and sod installation, the Court order the settlement funds be deposited into the Court's registry and dismiss all claims against BellSouth with prejudice.  *Id.* at p. 9.  Alternatively, BellSouth seeks sanctions against Holmes for her harassing and frivolous conduct.  *Id.*

On July 9, 2024, Holmes filed an opposition to BellSouth's motion.  [doc. #70].  She argues that the request for sanctions should be denied, asserting that her emails lacked "any tone of hostility."  *Id.* at p. 4.  Instead, Holmes contends that BellSouth's responses reflected "a severe diabolical disliking" based on her age, sex, and/or race.  *Id.* at p. 8.  She further questioned the qualifications of BellSouth's engineer, Welch, and demanded that BellSouth provide proof of her professional licensure and authority.  *Id.* at p. 7.

After reviewing the cross-motions, the Court set a hearing for August 7, 2024.  [doc. #72]. At the hearing, Holmes appeared *pro se*, and Windsor Richmond ("Richmond") was present on behalf of BellSouth.  (Transcript of Hearing [doc. #80, p. 2]) (hereinafter referred to as TR2).  First, it was clarified the only sanction BellSouth is seeking is dismissal of this suit with prejudice.  (TR2 p. 4).  All parties agreed that these terms of the settlement have been met: (1) the innerduct has

been removed from the property; (2) the handhold in the rear of the property has been removed; and (3) $10,000 in settlement funds would be provided once this matter is resolved. (TR2 pp. 8-9). The remaining issues concerned the restoration of Holmes' property, specifically the sod and rear wooden fence, and the signing of a written receipt and release agreement. (TR2 p. 9). BellSouth and Holmes agreed that BellSouth offered Holmes an additional settlement fund amount of $2,000, but Holmes did not accept that offer. (TR2 p. 12, 32). No arguments were presented at the hearing regarding Holmes' arguments about the maintenance of the new servitude or having an authorized representative of BellSouth sign the settlement agreement.

At the hearing, Holmes argued that the rear fence had not been repaired, stating that any attempt to do so would require permits and a site plan. (Tr. 11, 12, 14, 18). She further claimed that the fence was leaning, and while she did not want repairs on the cyclone fence due to the vines, the rear wooden fence needed attention. (TR2 p. 23). As for the sod, Holmes contended that, at maximum, two pallets were still needed to complete the job. (Tr. 27).

BellSouth countered that no evidence, such as photographs, had been provided to show damage to the fence or areas requiring additional sod. (Tr. 32). BellSouth requested that the Court enforce the original settlement agreement from April 23, 2024. (Tr. 32).

BellSouth called Welch, its only witness, who testified that she was present at the settlement conference and understood the settlement to require BellSouth to restore the property, including repairing the fence if Holmes identified any damage. (TR2 p. 36). Welch stated that during a visit to Holmes' property in May 2024, Holmes could not point out any fence damage. (TR2 p. 37). On that day, Ed Herring from Deviney Construction and Jarvis were there with Welch. (TR2 p. 38). Their role was to meet Holmes and come up with a plan for what needed to be done. (TR2 p. 39). On cross-examination, Welch said that Deviney was not a fence contractor. (TR2 p.

39).  Welch asserts she inspected the rear wooden fence that day, but Holmes contends that Welch did not go to the back to inspect the rear wooden fence.  (TR2 p. 41).   Welch also admitted that she had not made any effort to repair the fence.  (TR2 p. 44).

As the hearing was nearing its conclusion, Holmes argued that BellSouth had not fulfilled all settlement terms.  (TR2 p. 55).  Holmes further stated that she does not "even care about the sod, to be real honest. I'm just really concerned about my fence."  (TR2 p. 69).   BellSouth maintained that it has restored the property to its original condition and asked this Court for a dismissal of this suit.  (TR2 p. 56).

At the close of the hearing, the undersigned determined that a transcript of the April 23, 2024, settlement conference was necessary to make a ruling.  (TR2 p. 60).  Once the transcript was filed, the Court would take the matter under advisement and allow both parties to supplement their motions with additional information and arguments.  (TR2 pp. 63-64).

Following the hearing on the cross-motions, both Holmes and BellSouth submitted supplemental memorandums.   On September 12, 2024, Holmes filed her supplemental memorandum [doc. #79], asserting that her only obligation was to grant BellSouth access to complete the sod and fence repairs.  *Id.* at p. 22.  She argues that she is not responsible for obtaining estimates or hiring contractors.  *Id.*

The following day, on September 13, 2024, BellSouth filed its supplemental memorandum. [doc. #78].  BellSouth contends that prior to the settlement conference, there was not a single pleading filed by Holmes that referenced damage to the rear wooden fence.  *Id.* at p. 2.  BellSouth argues that at the settlement conference, it was agreed that Welch would determine what needed repairing on the fence.  *Id.* at p. 3.  According to BellSouth, when Welch inspected the fence at Holmes' property, Holmes could not identify any damage.  *Id.* at p. 5.

Accordingly, the matter is ripe.

## Law and Discussion

It is well settled that a federal court may retain jurisdiction over a matter for purposes of enforcing a settlement if such intent is clear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994). By the terms of the 90-day order of dismissal, this Court retained jurisdiction of the action for purposes of enforcing the parties' settlement agreement. [doc. #67]. The parties filed their motions well within the 90-day period of retained jurisdiction, and, therefore, this Court has jurisdiction to enforce the settlement.

There is no dispute that a settlement agreement was reached in this matter. During the hearing on the cross-motions, the parties concurred that the following settlement terms were satisfied: (1) the innerduct has been removed from the property; (2) the handhold in the rear of the property has been removed; and (3) the settlement funds of $10,000 will be provided once this matter is resolved. (TR2 pp. 8-9). The only terms that were in dispute at the time of the hearing were: (1) the restoration of Holmes' property, specifically concerning the sod and rear wooden fence; and (2) the signing of a written receipt and release agreement. However, both parties recognize that the written receipt and release agreement remains to be fully executed.

### I.    Sod Installation

At the conclusion of the hearing held on August 7, 2024, Holmes stated that she no longer cared about the sod, but rather was concerned about the rear fence. First, it, thus, appears that Holmes has waived any claim regarding the sod installation. However, even if she has not, or (as she is want to do) later raises this argument again, the undersigned finds that the evidence is clear that BellSouth complied with the terms of the settlement by laying sod. Thus, this Court finds that the settlement term pertaining to property restoration through sod installation has been satisfied.

Accordingly, IT IS RECOMMENDED that Holmes' Motion to Enforce Settlement Agreement be DENIED to the extent it seeks enforcement of the sod installation.

## II.      Rear Wooden Fence Repairs

Regarding the rear wooden fence, it was agreed at the settlement conference that BellSouth would undertake the necessary repairs.  BellSouth articulated its obligation to "reinforce the back fence" during the discussions surrounding the settlement terms.  (Settlement Conference Transcript [doc. #76, p. 4).

At the hearing, BellSouth provided Welch's testimony to support its argument that Holmes did not point out the damage to the rear wooden fence during Welch's inspection of her property. Additionally, BellSouth asserts that the first mention of any damage to the rear wooden fence occurred only during the settlement conference.  While those statements may be factual, the Court is bound to apply the terms as the parties agreed to them.

First, Holmes disclosed the damage to BellSouth during the settlement conference, stating on the record that the rear wooden fence had "came a-loose" and "came out of the little holes." (Settlement Conference Transcript [doc. #76, pp. 3-4]).  These statements informed BellSouth of the damage referred to concerning the rear wooden fence.  Holmes' failure to physically point out the damage does not negate the validity of the settlement term requiring the rear wooden fence repair.

Furthermore, BellSouth's assertion that the initial mention of damage to the rear wooden fence occurred solely during the settlement conference is fundamentally misplaced.  Regardless of whether the damage to the rear wooden fence was first mentioned in the original Complaint or during the settlement conference, BellSouth agreed to the settlement term requiring the repair of the rear wooden fence.  By voluntarily agreeing to this term, BellSouth assumed a binding

obligation to fulfill it, regardless of when the discussion surrounding the fence's condition took place. Thus, BellSouth is legally bound to execute its obligation to repair the rear wooden fence.

Accordingly, IT IS RECOMMENDED that BellSouth be ordered to hire a third-party contractor to reinforce the rear wooden fence on Holmes' property. Holmes is required to provide access to her property for the third-party fencing contractor. BellSouth must file evidence in the record confirming that the fence has been repaired no later than seven (7) days following the completion of the repair. **To be clear, Holmes is not entitled to replacement of her fence, but only to the reinforcement agreed to during the settlement conference.**

During the hearing, Holmes was adamant that a city permit would be required and that it would cost her $1,500. However, her fence is not being replaced or moved, merely reinforced in the same location. The undersigned, thus, finds, as matter of law, that no permit is required under these circumstances. To further reassure her, to the extent necessary, the City of Shreveport shall be **ORDERED** to allow the reinforcement of her fence without further permitting.

Thus, to the extent that Holmes' Motion to Enforce Settlement Agreement seeks enforcement of the settlement term regarding the repair of the rear wooden fence, IT IS RECOMMENDED that it should be GRANTED, and BellSouth's motion is DENIED.

### III.    $10,000 Settlement Funds

Both parties agreed at the settlement conference and hearing on the cross-motions that BellSouth would furnish Holmes with $10,000 as part of the settlement. This contention has not changed. Thus, BellSouth is required to deposit the settlement funds, amounting to $10,000, into the registry of the Court. Accordingly, IT IS RECOMMENDED that BellSouth's Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with

Prejudice, to the extent it seeks to deposit the settlement funds into the Court's registry, be GRANTED.

### IV.      Written Receipt and Release Agreement/Sanctions

Holmes contends that her sole obligation is to grant BellSouth access to her property for the completion of the sod installation and rear wooden fence repairs. (Supplemental Memorandum [doc. #79, p. 22]). However, this is not the entirety of Holmes' obligations in this matter. It was expressly agreed upon by both parties during the settlement conference that Holmes would dismiss the lawsuit with prejudice and sign a written receipt and release agreement. While it is understandable that she would not agree to dismissal until the parties' issues were resolved, Holmes has never signed the release, for which she had a clear duty.

"If the Court is to find that a compromise did not take place," [doc. #69-1, p. 9], BellSouth moves this Court to impose the sanction of dismissing all claims against BellSouth with prejudice on Holmes. BellSouth asserts that Holmes has engaged in frivolous and harassing conduct through her pleadings, emails, and phone calls, warranting dismissal of the suit with prejudice. (Memo in Support of M/Enforce [doc. #69-1, p. 6]). To support its claim for sanctions, BellSouth points to "virtually every" pleading that Holmes has filed in this matter. *Id.* at p. 7.

Under Federal Rule of Civil Procedure 11, every pleading "must be signed" by either an attorney or by a party personally if the party is unrepresented. FED. R. CIV. P. 11(a). When an attorney or unrepresented party presents to the court a pleading, they are certifying "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass . . ." FED R. CIV. P. 11(b)(1). Any party may bring a motion for sanctions, and the motion must be "made

separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  FED R. CIV. P. 11(c)(2).

The purpose of Rule 11 is to deter baseless filings in the district court and to spare innocent litigants and overburdened courts from the filing of frivolous lawsuits.  *Cotter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Under the objective standard of reasonableness applied under Rule 11, an attorney's subjective good faith is not enough to immunize him from sanctions based on a Rule 11 violation.  *Jenkins v. Methodist Hosps. Of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007).  In deciding a motion under Rule 11, courts within the Fifth Circuit are required to determine whether the signatory has complied with the affirmative duties imposed under the rule.  *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988).

First, the undersigned has found that a compromise did take place, and it is recommended that those terms be enforced.  Under these circumstances, BellSouth's alternative motion for sanctions under Rule 11 is DENIED.

However, it is clear to the undersigned that Holmes has no intention of further cooperating with Bellsouth, its representatives, and counsel.  From the very beginning of this litigation, BellSouth has sought to right the only wrong to Holmes—the improper placement of its equipment on her property and the ensuing property damages.  While Holmes has contended that she wanted the equipment removed, she continued to file with the Court, attempting to add more frivolous claims, and refused to allow BellSouth on her property to do exactly what she wanted done.  The Court recognizes that there has been a breakdown in communication between the parties and that communication has become antagonistic.  Thus, while couched in the alternative and under Rule 11, the undersigned agrees with BellSouth that sanctions are appropriate in this matter, and the Court enjoys the inherent power to sanction when necessary.

Therefore, rather than require BellSouth's counsel to engage in the fruitless pursuit of negotiating a release and obtaining Holmes' signature,  IT IS RECOMMENDED that, upon the filing of the evidence confirming the reinforcement of the fence, the Court will release the settlement proceeds to Holmes and simultaneously dismiss this matter with prejudice.  To further ensure the end of this litigation, IT IS ALSO RECOMMENDED that Holmes be barred from filing any further lawsuits against BellSouth without the review of the Court.

Thus, to this extent, IT IS RECOMMENDED that BellSouth's Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with Prejudice be DENIED, and the alternative proposed by the undersigned be undertaken instead.

### V.    Additional Settlement Funds Offer

BellSouth offered an additional $2,000 to cover the cost of the sod and any necessary fence repairs after the initial sod installation.  (Memo in Support of M/Enforce [doc. #69-1, p. 4]).  In BellSouth's motion, it sought this Court to enforce the additional offer of settlement funds as an agreement.  However, at the hearing, both parties stipulated that Holmes had not agreed to accept the $2,000 in lieu of BellSouth repairing the rear wooden fence.  (TR2 p. 12, 32).

Accordingly, IT IS RECOMMENDED that BellSouth's Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with Prejudice, to the extent it seeks to enforce the offer of additional settlement funds as an agreement, be DENIED.

### VI.    Resolution of Remaining Arguments

No arguments were presented at the hearing regarding Holmes' arguments about the maintenance of the new servitude or having an authorized representative of BellSouth sign the settlement agreement.  Although Holmes raised these arguments in her Motion to Enforce

14

Settlement Agreement, because no argument was presented at the hearing, they have thus been waived.

Accordingly, to the extent that Holmes' Motion to Enforce Settlement Agreement seeks maintenance of the new servitude or requires an authorized representative of BellSouth to sign the settlement agreement, IT IS RECOMMENDED that it be DENIED.

### Conclusion

For the foregoing reasons and as set forth in the body of this Report and Recommendation,

IT IS RECOMMENDED that Plaintiff Pia Holmes' Motion to Enforce Settlement Agreement be GRANTED IN PART and DENIED IN PART.

It is further RECOMMENDED that Defendant BellSouth Telecommunications, LLC d/b/a AT&T Louisiana's Motion to Enforce Settlement and Sanctions, or alternatively, Motion to Dismiss Plaintiff's Claims with Prejudice be GRANTED IN PART and DENIED IN PART.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS**

**AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 25th day of October, 2024.


KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE